**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ALBERTO C. RIVERA-CARRERO, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> CESAR A. REY-HERNANDEZ, ET AL., <br><br> Defendants | Civ. No. 04-1925(PG(PG) |

**OPINION AND ORDER**

Plaintiffs[1] filed suit against defendants Cesar Rey-Hernandez, Milagros del Carmen Hernandez-Rosario ("Hernandez"), Irma A. Rodriguez-Avilez, Ana M. Matos ("Matos"), Brenda Irizarry, Ana Mendez, and Waleska Ortiz (collectively "defendants") claiming violations of their rights under the First and Fourteenth Amendments as well as supplemental law claims under Puerto Rico Law 100 and Article 1802 of the Puerto Rico Civil Code. Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Docket No. 16.)  For the following reasons, the Court **GRANTS IN PART DENIES IN PART** defendants' motion.

**FACTUAL ALLEGATIONS**

Plaintiff Alberto C. Rivera-Carrero ("Carrero") was a career employee of the Commonwealth of Puerto Rico Department of Education for approximately 18

---

[1] The named plaintiffs are Alberto C. Rivera-Carrero, his wife Maria M. Rosario-Cora (hereinafter "Rosario-Cora"), and the Conjugal Partnership Rivera-Carrero/Rosario-Cora.  Plaintiffs also appear representing their minor children: Alondra M. Rivera-Hernandez, Andre Rivera-Hernandez, and Karlo F. Benitez Rosario (collectively referred to as "plaintiffs").  Plaintiffs state in the complaint that co-plaintiff, Rosario-Cora and each one of the minor children have suffered substantial damages as a consequence of plaintiff Carrero's sufferings and damages. (Docket No. 1 at 40-43.) Only plaintiff Carrero and his wife Rosario-Cora, however, have asserted a claim of direct constitutional deprivation. It is well-settled that "§ 1983 does not provide a cause of action for the relatives of a Plaintiff". Quiles Rodriguez v. Calderon, 172 F.Supp.2d 334, 346-47 (D.P.R. 2001). See Ramirez-De Leon v. Mujica-Cotto,  345 F.Supp.2d 174, 181 (D.P.R. 2004)(citations omitted). "Only the person toward whom the state action was directed, and not those incidentally affected, may maintain a section 1983 claim." Id. (quoting Guzmán Rosa v. de Alba, 671 F.Supp. 882, 883 (D.P.R.1987)).  A person may not sue or recover for the deprivation of another's civil rights. Id., at 182 (citing Quiles ex rel. Proj. Head Start v. Hernández Colón, 682 F.Supp. 127, 129 (D.P.R. 1988). "Family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." Medina Perez v. Fajardo,  257 F.Supp.2d 467, 472 (D.P.R. 2003)(citations omitted). See also Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 563 (1st Cir.1988). Accordingly, the § 1983 claims are dismissed as to the minor children.

Civ. 04-1925(PG)                                                          Page 2

years. (Docket No. 1 at 2 & 5.) Carrero labored at the Escuela Libre de Música ("the School") as Director of its Junior and High School. (Id. at 5.) Carrero is an active member of the New Progressive Party ("NPP"). (Id. at 2 & 5.) Defendants are all members of the Popular Democratic Party ("PDP"). (Id. at 2.)

Plaintiffs allege that since December 17, 2001[2], Carrero has been the target of politically motivated actions against him by co-defendant Matos and Hernandez[3]. He claims that Matos' and Hernandez' actions were part of a pattern of political harassment to oust him, actions which were recurring up until his suspension in May of 2004.

Carrero further claims that co-defendant Cesar A. Rey ("Rey"), the Secretary of the Department of Education, has ignored several letters that plaintiffs have sent to him regarding the situation with Hernandez and Matos as well as others matters[4].

Throughout the year 2003, Carrero encountered numerous problems with Matos regarding administrative decisions at the School. (Id. at 27-30.) Finally on September 23, 2003, he was served with notice of an Administrative Order of suspension of work and salary. Plaintiffs claim that the Order, which was signed by Rey, was based on false information. (Id. at 30.) After a

---

[2] On December 17, 2001, Hernandez appointed co-defendant Matos as Co-Director in charge of Academic Affairs at the School.

[3] For example, on June 2002, plaintiff was informed that he had to travel to Hartford, Connecticut to represent Puerto Rico as a member and Associate Conductor of the Philharmonic Orchestra of Puerto Rico. Plaintiff alleges that Hernandez selectively approved other teachers' leave but did not approve his request and deducted from his paycheck the travel expenses and from his vacation time the days he took travel to Hartford. (Id. at 10-11.)

[4] It is alleged in the complaint that on November 25th 2002, in a meeting with at co-defendant Rey's office, Carrero spoke privately with Rey and handed him his attendance records for the months of June, July, and August 2002 from which Hernandez had deducted the time he had traveled to the artistic events abroad. Carrero claims that Rey told him he would take care of the situation but that to date his request has been unanswered. (Docket No. 1, Complaint at 16-17.) Furthermore, on August 28, 2002, Rosario-Cora filed an administrative complaint to contest the inequality of her and Carrero's salaries, $2,920.00 and $2,720.00, respectively, in comparison to Matos' salary ($3,020.00), particularly in light of the latter's lack of experience. Plaintiffs aver that the administrative complaint has not been answered by the Department of Education's Investigative office or the Legal Division headed by co-Defendant Irma A. Rodriguez-Avilez.

meeting in December 2003 regarding the suspension order, Carrero was presented with a proposal: the Department would revoke the suspension if Matos and plaintiff tried again to work together for a period of three (3) months. Carrero accepted but Matos did not. In light of Matos' disagreement, co-defendant Irma A. Rodríguez-Avilés proposed that Carrero agree to be transferred to another school. Carrero refused and co-defendant Irma A. Rodríguez Avilés reacted by threatening plaintiff and telling him that it was in his best interest to accept a transfer to another school. (Id. at 32-33.)

Finally on May 1, 2004, plaintiff received a letter signed by co-defendant Rey informing him of the termination of his employment for disciplinary reasons. (Id. at 34.) On June 4, 2004, Plaintiff received another letter from co-defendant Rey indicating that the April 20, 2004 letter had mistaken information. Carrero was to receive a year of suspension of work and pay and then after that he would be transferred to another school. Carrero claims that this suspension violates his due process rights as well as applicable law and regulations which establish that transfers of personnel shall not be used as disciplinary measures. (Id. at 34-35.) Furthermore, following Carrero's suspension, Rey and Hernandez appointed Mr. Wilfredo Siaca, a well-known Popular Party member, to substitute him. (Id. at 35.)

## DISCUSSION

### I. Motion to Dismiss

When ruling on a 12(b)(6) motion a court must accept all well-pled factual averments as true and draw all reasonable inferences in favor of the non-moving party. Berezin v. Regency Savings Bank, 234 F.3d 68, 70 (1st Cir. 2000). A complaint should not be dismissed unless it appears beyond any doubt that the non-moving party can prove no set of facts which may support a claim entitling him or her to relief. Ronald C. Brown v. Hot, Sexy, and Safe Productions, Inc., 68 F.3d 525 (1st Cir.1995). While this standard is very generous to the non-moving party, it does not follow that it is completely "toothless". Zeus Projects Limited v. Pérez & Cia, 187 F.R.D. 23, 26 (D.P.R. 1999). The complainant may not rest merely on "unsupported conclusions or interpretations of law." Washington Legal

Civ. 04-1925(PG)                                                        Page 4

Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). In order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Gooly v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988). See Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004)("[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where, and why")). The Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996).

### II.   Failure to state a claim under 42 U.S.C. § 1983

#### A.   Conspiracy pursuant to § 1983

A conspiracy under 42 U.S.C. § 1983 is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988)(quotations omitted). To establish a conspiracy claim under §1983, plaintiff must "prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)(quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988). Plaintiff carries the burden of identifying the specific constitutional right infringed. See Albright v. Oliver, 510 U.S. 266, 271(1994).

Defendants argue that the complaint falls short of the requirements stated above inasmuch as plaintiffs' attempt to establish that a conspiracy took place without giving any indication as to how this conspiracy occurred and how all of the defendants participated in it. Furthermore, defendants argue that plaintiffs fail to allege any overt acts carried out by the defendants in furtherance of the conspiracy. A careful review of the complaint indeed shows that plaintiffs have failed to state a claim of conspiracy under §1983. Throughout the complaint, plaintiffs make a series

Civ. 04-1925(PG)                                                                        Page 5

of allegations of conspiracy, which are based on conclusory statements. (See Docket No. 1 at. 2, ¶2; 5, ¶5[5]; 6 -7, ¶6; 7, ¶6; 17, ¶19; 28, ¶35; 29, ¶35; 40, ¶54.) The complaint lacks the necessary factual allegations to either directly or inferentially, establish the material elements of a civil rights conspiracy. See Gooly, 851 F.2d at 515. Merely asserting that a conspiracy existed is insufficient to withstand defendants' motion to dismiss. See Washington Legal Foundation, 993 F.2d at 971.

Having failed to alleged the minimal facts necessary to show the existence of a possible "conspiratorial agreement" between the defendants, plaintiffs' claim of civil rights conspiracy must be dismissed with prejudice.

### B.   Political Discrimination

Defendants argue that at all times they were acting within the scope of their functions and in compliance with the regulations of the Department of Education. Furthermore, that the complaint fails to establish the causal connection between the alleged political discrimination and the defendants conduct thus, plaintiffs' claim should be dismissed.

In the complaint, plaintiffs allege that Carrero is an active member of the NPP and that it is a fact well-known by defendants who are all PDP members. (Docket No. 1 at 2 & 5.)  Furthermore, he claims that the adverse employment actions he suffered by the defendants were because of his political affiliation. (Docket No. 1 at 2-35.). Lastly, it is alleged that when he was suspended, defendants appointed a well-known PDP member in his position. (Id. at 35.)

To establish a prima facie case, facts must be alleged that show that there is a causal connection linking defendants allegedly discriminating acts to Carrero's political beliefs. See LaRou v. Ridlon, 98 F.3d 659, 662 (1st Cir. 1996). For political affiliation to be a motivating factor behind an adverse employment action, those responsible for the deprivation of

---

[5] Plaintiff erroneously numbered two paragraphs 5.  We make reference to the first of the two paragraphs numbered 5, which is the paragraph that begins on page 3 and ends on page 5 where the reference to conspiracy is made.

Civ. 04-1925(PG)                                                        Page 6

constitutional rights must have had knowledge of the plaintiff's political affiliation.  See Goodman v. Pennsylvania Turnpike Comm'rs, 293 F.3d 655, 64 (3d Cir. 2002).

A simple reading of the complaint shows that Carrero has pled sufficient facts that if proven true, would support a claim of political discrimination.  The complaint lacks, however, any allegation regarding Rosario-Cora that would sustain a claim of political discrimination. Accordingly, only Rosario-Cora's political discrimination claim should be dismissed.

### C.   Due process violation[6]

To prevail in a procedural due process claim, plaintiffs must show that they had a property interest and that defendants, acting under color of state law, deprived them of that interest without a constitutionally adequate process. PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 542-43 (1985). Property interests subject to due process protection are not created by the Constitution but by "existing rules or understandings that stem from an independent source such as state law." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must . . . have a legitimate claim of entitlement to it based on a contractual or statutory language, or mutually explicit understandings." Id.; Perry v. Sindermann, 408 U.S. 593, 601 (1972).

Defendants argue, that Carrero requested and was granted an administrative hearing prior to his suspension. Furthermore, that the administrative hearing was carried out according to the rules and regulations of the Department of Education and that plaintiff was represented by counsel at said hearing.  Therefore, they contend he was afforded due process.

A review of the complaint shows Carrero's allegations withstand

---

[6] The Court notes that only in the complaint only Carrero raises allegations of due process violation.

Civ. 04-1925(PG)                                                         Page 7

defendants' motion to dismiss. Carrero alleges he was a career employee of the Department of Education and therefore, he had a property interest in his employment. (Docket No. 1 at 40-41 ¶55.) Furthermore, Carrero claims that defendants acting pursuant to their authority within the Department of Education deprived him of said interest without a constitutionally adequate process (Id. at 1 ¶3, 35 ¶43, 36 ¶46, 38 ¶50, 40-41 ¶55.) Accordingly, taking the allegations of the complaint as true, we deny defendants' motion as to the due process claim.  The complaint lacks, however, any allegation of due process violation regarding plaintiff Rosario-Cora, hence we dismiss her claim with prejudice.

### E.   Defendants are entitled to qualified immunity

When evaluating a claim of qualified immunity, the Court must engage in a two-step inquiry. Kelley v. LaForce, 288 F.3d 1, 6 (1st Cir. 2002)(citing Wilson v. Layne, 526 U.S. 603, 609(1999)). The Court must first determine whether plaintiffs allege a "deprivation of a constitutional or federal right by the defendant official." Kelley, 288 F.3d at 6 (internal citations omitted).  "If so, the court must [then] 'determine whether that right was clearly established at the time of the [official's] alleged violation'." Wilson, 526 U.S. at 609. If both questions are answered affirmatively, the Court should proceed to determine "whether an objectively reasonable official would have believed that his conduct was lawful 'in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct'." Kelley, 288 F.3d at 6 (quoting McBride v. Taylor, 924 F.2d 386, 389 (1st Cir.1991)).  The First Circuit has recognized that "[a]lthough . . . 'the immunity question should be resolved, where possible, in advance of trial,' pre-trial resolution sometimes will be impossible because of a dispute as to material facts."  Kelley, 288 F.3d at 7 (quoting Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997). In such a cases,"[o]nly after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity". Kelley, 288 F.3d at 7 (citing Swain, 117 F.3d at 10).

Civ. 04-1925(PG)                                                         Page 8

Defendants argue that allegations contained in the complaint are insufficient to establish defendant's personal liability inasmuch as they had no personal involvement in the alleged violation of the plaintiff's rights. Furthermore, that at all times they were acting within the scope of their functions. Defendants insist that they did not deprive plaintiff of his constitutional rights and even if they did, they objectively and reasonably believed their acts were legal.

At the outset, it is clear that there can be no question that Carrero's First Amendment rights to be free from any sort of political discrimination was clearly established at the time defendants allegedly deprived him of his rights. See Guillemard Gionorio v. Contreras Gomez, 322 F.Supp.2d 153, 161-62 (D.P.R. 2004), and the cases cited therein. Notwithstanding, to be cloaked with qualified immunity, the Court must determine whether defendants could have believed their actions were lawful in light of clearly established law and the information they possessed at the time of their allegedly unlawful conduct. Upon carefully reviewing the complaint, we find there are issues of fact regarding possible discriminatory animus on defendants' part that preclude us from considering the qualified immunity defense at this time. Accordingly, defendants' dismissal request on qualified immunity grounds is denied without prejudice.

### F.  The Eleventh Amendment bars the official capacity claims

Defendants submit as an additional ground for dismissal, that all the defendants in their official capacity are entitled to sovereign immunity under the Eleventh Amendment which bars all monetary claims against them.

The Eleventh Amendment grants immunity to non-consenting states from suits in federal courts. See Alden v. Maine, 527 U.S. 706, 728 (1999); see also U.S. Const. Amend. XI.  Sovereign immunity under the Eleventh Amendment extends beyond the core of the state government to "arms of the state". Metcalf & Eddy v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 (1st Cir. 1993). The Eleventh Amendment applies to Puerto Rico in the manner, and to the same extent, as a state.  De León López v.

Civ. 04-1925(PG)                                                        Page 9

Corporación Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991). The purpose of the 'arm of the state' analysis is to protect the state treasury from having to satisfy a judgment against a government entity. See Metcalf, 991 F.2d at 939.  "A 'slice of state power without more will not sate the Eleventh Amendment.'"  Id. (quoting Lake County Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979)).  Because the Eleventh Amendment bars lawsuits in federal court that "attempt to impose liabilities necessarily payable from public coffers," Iberia Líneas Aéreas de España v. Vélez-Silva, 59 F. Supp. 2d 266, 269 (D.P.R. 1999), suits against individual officials are also barred "when the action is in essence one for the recovery of money from the state." Ford Motor Co. v. Dept. of the Treasury, 323 U.S. 459, 464 (1945). It is firmly established that the Department of Education is an arm of the State. See Garcia-Figueroa v Puerto Rico, 204 F.Supp.2d 281(D.P.R. 2002). Accordingly, the Eleventh Amendment bars Carrero's damages claims against defendants in their official capacity.

> **G.    Plaintiff has failed to state a claim under Puerto Rico Law 100 (29 L.P.R.A. §§ 146 et seq.)**

Defendants argues that the Department of Education is an agency of the Commonwealth of Puerto Rico and as an arm of the state, does not operate as a business or private enterprise, therefore, cannot be considered an employer under the definition of Law 100[7]. It is settled that Law 100 does not apply to the Department of Education. See Hernandez Payero v. Puerto Rico,  338 F.Supp.2d 279, 282 (D.P.R. 2004) (finding that Law 100 is not applicable does not apply to Commonwealth of Puerto Rico agency that is an arm of the state and does not function as a business or private entity). See also Arizmendi-Corales, et al. v. Javier Rivera, et al., No. 97-2140,

---

[7] Law 100 only applies to an "employer," which is defined under 29 P.R. laws Ann. §§ 151 as "any natural or artificial person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person. It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or agencies." Id., see Rodriguez Sostre v. Municipio de Canovanas, 203 F.Supp.2d 118, 119 (D.P.R. 2002).

Civ. 04-1925(PG)                                                      Page 10

2001 WL 1636736, at *2 (D.P.R., Oct. 22, 2001)(unpublished opinion.) Accordingly, plaintiffs' supplemental law claim pursuant to Puerto Rico Law 100, 29 P.R. laws Ann. §§ 151, is dismissed with prejudice.

### H.   Plaintiffs' Puerto Rico law tort claim

Defendants' move to dismiss plaintiffs' tort claim under Article 1802 of the Puerto Rico Civil Code arguing that when supplemental jurisdiction is founded solely upon federal question and the federal claim is dismissed, the district court is free to dismiss the remaining state claims without prejudice. However, the Court has not entirely dismissed plaintiffs' federal claims therefore, the Court, at this time denies defendants' request without prejudice.

### CONCLUSION

WHEREFORE, for the preceding reasons, the Court **GRANTS IN PART AND DENIES IN PART** defendants' Motion to Dismiss (Docket No. 16.) Partial judgment shall be entered dismissing all claims with the exception of Carrero's political discrimination and due process claims against defendants in their personal capacity and the supplemental tort law claim of all plaintiffs.

IT IS SO ORDERED.

In San Juan, Puerto Rico, March 7, 2006.

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE